**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN RYAN VOLNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00054-NAB |
| | ) | |
| JASON LEWIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Steven Ryan Volner for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the financial information submitted in support, the Court finds that the motion should be granted. *See* 28 U.S.C. § 1915(a)(1).[1] Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The

---

[1] Plaintiff has already paid an initial partial filing fee of $25.00.

court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a self-represented litigant who is currently incarcerated at the South Central Correctional Center in Licking, Missouri. At the time relevant to this complaint, however, he was an inmate at the Southeast Correctional Center (SECC) in Charleston. Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, naming Jason Lewis, Latonia Young, and Kevin Calonne as

defendants. All three are sued in both their official and individual capacities. (Docket No. 1 at 2-4).

The complaint is handwritten on a Court-provided § 1983 form. Attached to the complaint are several exhibits, including an informal resolution request (IRR), IRR response, grievance, grievance response, grievance appeal, and grievance appeal response. (Docket No. 1-1). The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

In his "Statement of Claim," plaintiff begins by asserting that on August 3, 2020, he "was read a violation when [he] was on suicide watch by Kevin Calonne and did not receive a copy." (Docket No. 1 at 4). Next, he states that there is an institutional policy "that specific evidence is to be indicated in the body of the violation, such as medical reports when dealing with 2.1 and 10.1 violations." Plaintiff alleges that "Latonia Young failed to issue [him] a new hearing after changing [his] violation to a 2.1" on August 28, 2020. According to plaintiff, Young also "failed to notify [him] of these changes until" October 16, 2020. Finally, plaintiff claims that "Jason Lewis deprived [him] of [his] first amendment [rights] by failing to address [his] due process claim in the grievance process." (Docket No. 1 at 5).

Aside from the four brief, vague statements outlined above, plaintiff provides no further factual allegations. Based on his exhibits, however, it appears that plaintiff was issued a conduct violation for assaulting a correctional officer by striking her with his head. (Docket No. 1-1 at 2,

6). Plaintiff was initially given a #2.1 violation, but the adjustment hearing officer recommended a modification to a #10.1. (Docket No. 1-1 at 3, 5). That modification was overturned to retain the original #2.1 violation. (Docket No. 1-1 at 6). In his IRR, grievance, and grievance appeal, plaintiff asserts that his violation should be a #10.1, because his victim did not claim she sought medical attention, and because there was not a "serious physical injury" since there was "no blood or broken bones." (Docket No. 1-1 at 2, 4, 5). Contrary to plaintiff's suggestion, the IRR response indicates that the officer he assaulted "did seek outside medical attention," thereby warranting the #2.1 violation. (Docket No. 1-1 at 6).

Plaintiff does not allege that he suffered any injuries due to the actions of defendants. (Docket No. 1 at 5). Nevertheless, he seeks nominal damages of $1.00, as well as the dismissal and expungement of his #2.1 violation due to the violation of his First, Fifth, and Fourteenth Amendment rights. (Docket No. 1 at 6).

**Discussion**

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights when he was given a #2.1 conduct violation rather than a #10.1 conduct violation, following plaintiff's assault on a correctional officer. Because plaintiff is proceeding in forma pauperis, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

**A. Official Capacity Claims**

Plaintiff has sued defendants Lewis, Young, and Calonne in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public

employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, all three defendants are alleged to be employed by the Missouri Department of Corrections. As such, the official capacity claims against them are actually claims against the State of Missouri itself, their employer.

To the extent that plaintiff is seeking monetary damages, plaintiff's claim must be dismissed. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). As plaintiff has failed to demonstrate all the elements of a § 1983 action, he has failed to state a claim.

Any claim for money damages is also barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). Additionally, "[a] claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

First, the Supreme Court has determined that § 1983 does not revoke the states' Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe...that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). Second, Missouri has not waived its sovereign immunity in this type of action. *See* RSMo § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions). As neither exception pertains to plaintiff's case, any claim for damages against defendants in their official capacities is barred.

To the extent that plaintiff is seeking prospective injunctive relief, he has not demonstrated that the State of Missouri is liable for any constitutional violation. To prevail on an official capacity claim against an individual, plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); and *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the...official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486

F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar

constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not presented any allegations that can be attributed to the State of Missouri. That is, his facts do not support the proposition that he was injured due to a policy, custom, or failure to train on the part of the state.

First, as to policy, plaintiff does make mention of an institutional policy being at issue in this case. More precisely, he asserts that this particular "policy states that specific evidence is to be indicated in the body of the violation." Plaintiff does not, however, allege that this policy is unconstitutional on its face, nor does he assert that it was inadequate, much less that its "inadequacies were a product of deliberate or conscious choice by the policymakers." To the contrary, he seems to have no argument with the policy itself, but rather contends that individuals at SECC violated it. In any event, plaintiff has failed to present any facts demonstrating that his constitutional rights were violated by a policy that can be ascribed to the State of Missouri.

With regard to an unconstitutional custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by SECC employees, let alone that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Rather, plaintiff's complaint focuses on a single incident in which he was involved, and does not show the existence of any pattern whatsoever.

Likewise, plaintiff's facts do not demonstrate a failure to train. As noted above, to prove a deliberate indifference in failing to train or supervise, plaintiff must adduce facts showing that officials were aware that its procedures were likely to result in constitutional violations. Ordinarily, such notice is demonstrated by alleging a "pattern of similar constitutional violations by untrained employees." Plaintiff's facts do not establish the requisite pattern.

Finally, to the extent that plaintiff attempts to hold the State of Missouri liable for merely employing defendants, the Court notes that respondeat superior is not available in a § 1983 claim. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018).

For all the reasons discussed above, plaintiff's facts are not sufficient to state a claim for purposes of initial review. Therefore, the official capacity claims against defendants Lewis, Young, and Calonne must be dismissed.

**B. Individual Capacity Claims**

Plaintiff has also sued defendants in their individual capacities. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

**i. Jason Lewis**

With regard to defendant Lewis, plaintiff asserts that "Lewis deprived [him] of [his] first amendment [rights] by failing to address [his] due process claim in the grievance process." This is not sufficient to state a claim.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Because a prison's grievance procedure does not implicate a constitutional right, Lewis's alleged failure to address plaintiff's grievance claim does not state a violation under 42 U.S.C. § 1983. Furthermore, plaintiff's single, conclusory allegation against Lewis does not establish a causal connection between an action taken by Lewis, and the violation of one of plaintiff's constitutional rights. In other words, plaintiff has not provided any facts supporting the assertion that Lewis took a specific action resulting in a First Amendment violation. For these reasons, plaintiff's individual capacity claim against Lewis must be dismissed.

**ii. Kevin Calonne and Latonia Young**

Plaintiff accuses Calonne of not giving him a "copy" of his "violation when [he] was on suicide watch," and Young of failing "to issue [him] a new hearing after changing [his] violation to a 2.1." The Court has construed these allegations as an attempt to assert a violation of his right to due process.

The determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips*, 320 F.3d at 846. *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not").

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

With regard to establishing a liberty interest, the Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

As to what process is due, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319,

333 (1976). When an inmate is deprived of privileges or placed in special confinement status as punishment for past misconduct, due process requires a hearing beforehand. *Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992). Nevertheless, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Gonzalez-Perez v. Harper*, 241 F.3d 633, 637 (8th Cir. 2001). To that end, due process requirements include written notice of the charge; a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action; the right of the inmate to be present, call witnesses, and present documentary evidence; and, in limited situations, a counsel substitute. *See Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).

In this case, plaintiff has not established the deprivation of a liberty interest. Indeed, plaintiff's "Statement of Claim" does not include any indication as to the consequences plaintiff incurred as a result of his allegedly wrongful conduct violation. He has also not listed any injuries that he might have suffered.

The Court notes that in his grievance appeal, plaintiff asks for "release from ad seg." Thus, it stands to reason that plaintiff was placed into administrative segregation following his assault on the correctional officer. This, alone, is not enough to demonstrate a liberty interest, as the Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not – in and of itself – an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy*, 100 F.3d at 642 (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding

administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847. Rather, to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

Here, plaintiff makes only a fleeting mention of administrative segregation in a grievance appeal, and no mention of it in his actual "Statement of Claim." Certainly, he has not provided any facts tending to show that his placement in administrative segregation created an atypical and significant hardship. For example, there are no allegations that plaintiff was placed into administrative segregation for an inordinate length of time, or that his other rights – such as the right to adequate clothing, exercise, nutrition, and medical care – were curtailed.

To the extent that plaintiff is asserting that he has a liberty interest in the outcome of his disciplinary proceeding, such is not the case. *See Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011) (stating that prisoner had no protected liberty interest in the outcome of his routine disciplinary proceeding, and district court properly dismissed his claims against the defendants who were involved in this proceeding).

Because plaintiff has not adequately alleged the deprivation of a liberty interest, the Court does not need to assess the question of what process was due to plaintiff. Nonetheless, even if plaintiff had asserted a liberty interest, he has failed to demonstrate a violation of the Fourteenth Amendment by either Calonne or Young.

With regard to Calonne, plaintiff states that Calonne read him his violation but did not give him a copy. This is not sufficient to demonstrate the violation of his right to due process. In particular, plaintiff does not allege that he did not have notice of the charge against him. Moreover, he acknowledges that at the time he interacted with Calonne, he was on suicide watch, which was likely the reason he was not given a copy of the violation. These facts – without more – do not establish that Calonne prevented plaintiff from receiving "the opportunity to be heard at a meaningful time and in a meaningful manner" before being punished.

Likewise, as to Young, plaintiff states that Young "failed to issue [him] a new hearing." Nothing in the complaint, however, indicates that plaintiff was entitled to one. That is, there are no allegations that he was unaware of the charge against him; that he was not able to be present at the hearing and proffer witnesses and evidence; or that there was a lack of evidence to support the charge against him. Therefore, even if plaintiff had properly asserted a liberty interest – which he has not – he has still failed to establish a violation of due process. For these reasons, the individual capacity claims against Calonne and Young must be dismissed.

**C. Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). The motion will be denied as moot as this action is being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that the institution having custody of plaintiff shall, whenever the amount in plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the Clerk of Court for

the United States District Court for the Eastern District of Missouri, until the filing fee is fully paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 30th day of August, 2021.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE